# In the United States Court of Appeals for the District of Columbia Circuit

GLOBAL HEALTH COUNCIL, *et al.*,
*Plaintiffs-Appellees*,

*v.*

DONALD J. TRUMP, *et al.*,
*Defendants-Appellants*.

AIDS VACCINE ADVOCACY COALITION, *et al.*,
*Plaintiffs-Appellees*,

*v.*

DEPARTMENT OF STATE, *et al.*,
*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Columbia

## PETITION FOR REHEARING EN BANC

Lauren E. Bateman
Nicolas A. Sansone
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for AIDS Vaccine
Advocacy Coalition, et al.*

Daniel F. Jacobson
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(301) 823-1148

William C. Perdue
Sally L. Pei
Stephen K. Wirth
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000

*Counsel for Global Health Council,
et al.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................ii

INTRODUCTION AND RULE 40(b) STATEMENT ....................................1

STATEMENT OF THE CASE ...........................................................3

REASONS FOR GRANTING REHEARING EN BANC ...............................9

I.     The panel majority's holding that Plaintiffs lack a constitutional cause of action conflicts with precedent of this Court and the Supreme Court....................................................................9

II.    The panel majority's holding that Plaintiffs lack a statutory cause of action to challenge violations of appropriations laws conflicts with binding precedent of this Court and the Supreme Court and is otherwise unsupported................................................................14

III.   The issues presented are of exceptional importance................................16

CONCLUSION...............................................................................19

CERTIFICATE OF COMPLIANCE ...............................................20

CERTIFICATE OF SERVICE .......................................................21

i

# TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*City of New Haven v. United States,*
    809 F.2d 900 (D.C. Cir. 1987)...................................................................15, 16

*City of New York v. Ruckelshaus,*
    358 F. Supp. 669 (D.D.C. 1973) ..........................................................15

*Collins v. Yellen,*
    594 U.S. 220 (2021)................................................................................9

*Dakota Central Tel. Co. v. South Dakota ex rel. Payne,*
    250 U.S. 163 (1919)................................................................................11

*Dalton v. Specter,*
    511 U.S. 462 (1994)................................................................6, 9, 10, 11

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010)................................................................................9

*Guadamuz v. Ash,*
    368 F. Supp. 1233 (D.D.C. 1973) ........................................................15

*In re Aiken Cnty.,*
    725 F.3d 255 (D.C. Cir. 2013)..................................1, 2, 8, 12, 13, 15

*Kendall v. United States,*
    37 U.S. (12 Pet.) 524 (1838).............................................................2, 8

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) .................................................................6

*Louisiana v. Weinberger,*
    369 F. Supp. 856 (E.D. La. 1973) ......................................................15

*Murphy Co. v. Biden,*
    65 F.4th 1122 (9th Cir. 2023) .............................................................2

*Nat'l Council of Cmty. Mental Health Ctrs. v. Weinberger,*
    361 F. Supp. 897 (D.D.C. 1973) .........................................................15

*Nat'l Fair Hous. Alliance v. HUD*,
    2025 WL 2105567 (D.D.C. July 28, 2025) ........................................................13

*Mistretta v. United States*,
    488 U.S. 361, 381 (1989) ..........................................................................3

*Rochester Pure Waters Dist. v. EPA*,
    960 F.2d 180 (D.C. Cir. 1992) ..................................................................1

*State Highway Comm'n v. Volpe*,
    479 F.2d 1099 (8th Cir. 1973) ................................................................15

*Train v. City of New York*,
    420 U.S. 35 (1975)............................................................................2, 14

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*,
    665 F.3d 1339 (D.C. Cir. 2012) ..............................................................17

*Vera Inst. of Justice v. DOJ*,
    2025 WL 1865160 (D.D.C. July 7, 2025) ................................................13

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)..................................................................................9

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025)..................3, 13

**Statutes**

2 U.S.C. § 681(3) ................................................................................................15

22 U.S.C. § 2151(a) ..............................................................................................4

Foreign Assistance Act of 1961, Pub. L. No. 87-195, 76 Stat. 424 ....................3

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138
    Stat. 460
        Div. F, tits. II–III, 138 Stat. 460, 739–43 ..................................................4
        §§ 7019, 7030–61 ..................................................................................4

**Rules & Regulations**

Federal Rules of Appellate Procedure
    Rule 40(b)(2)(A)–(C) ..........................................................................2
    Rule 40(b)(2)(D) .........................................................................2, 16

Exec. Order No. 14169, 90 Fed. Reg. 8,619, 8,619 (Jan. 30, 2025) ...................11

**Other Authorities**

Daniella Medeiros Cavalcanti, et al., Evaluating the impact of two decades of
    USAID interventions and projecting the effects of defunding on mortality
    up to 2030, The Lancet (Jun. 30, 2025) ...........................................18

# INTRODUCTION AND RULE 40(b) STATEMENT

Courts have long recognized that "Congress has absolute control of the moneys of the United States." *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) (cleaned up). In this case, a divided panel issued a series of unprecedented legal conclusions that, taken together, prevent any private party from vindicating this fundamental principle by challenging the executive's refusal to spend appropriated funds. In so doing, the majority opinion conflicts with decisions of this Court and the Supreme Court, eradicates an injured party's ability to vindicate his or her rights, and effects a transformation in constitutional law.

To start, the panel majority announced a "new constitutional rule" that "Executive action that exceeds statutory authority or violates a statute can never be the basis of a constitutional cause of action." Dissenting Op. 47. On that basis, the majority concluded that Plaintiffs here are categorically precluded from bringing a constitutional claim challenging the Executive's refusal to carry out congressional mandates to spend foreign assistance funds. Op. 24. That holding directly conflicts with this Court's precedent. *See In re Aiken Cnty.*, 725 F.3d 255 (D.C. Cir. 2013) (Kavanaugh, J.) And as Judge Pan stated in dissent, it works a sea change in the structure of American

government by "allow[ing] Executive Branch officials to evade judicial review of constitutionally impermissible actions." Dissenting Op. 3. Further, in contravention of Supreme Court precedent, *see Train v. City of New York*, 420 U.S. 35 (1975), the panel held that parties harmed by unlawful impoundments of congressionally appropriated funds may not bring Administrative Procedure Act (APA) claims or ultra vires claims challenging violations of the underlying appropriations act. *See* Op. 25–31.

This case easily satisfies the criteria for en banc review. As the panel dissent explains, "the Supreme Court and [this] court have stated in no uncertain terms that the Executive, as a constitutional matter, has no authority to disobey duly enacted statutes for policy reasons," including in the context of appropriations. Dissenting Op. 3 (citing *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 613 (1838); *Aiken Cnty.*, 725 F.3d at 261 n.1). The panel's holding both conflicts with those precedents and, as the panel majority itself recognized, brings this Court into conflict with the law of the Ninth Circuit. Op. 24 n.15 (citing *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023)); *see* Fed. R. App. P. 40(b)(2)(A)–(C).

En banc review is likewise warranted in light of this case's exceptional importance. *See* Fed. R. App. P. 40(b)(2)(D). Without the full Court's

intervention, the panel majority's "acquiescence in and facilitation of the Executive's unlawful behavior" in impounding federal funds "derails" our constitutional system of separation of powers—a system that "serves as the 'greatest security against tyranny—the accumulation of excessive authority in a single Branch.'" Dissenting Op. 47 (quoting *Mistretta v. United States*, 488 U.S. 361, 381 (1989)). And it is beyond dispute that Defendants' impoundment of foreign assistance appropriations has deprived the most vulnerable people in the world of humanitarian assistance, leading to mass death, impoverishment, sickness, and waste. *See* JA77.

This Court recently granted en banc rehearing and restored a preliminary injunction over the government's jurisdictional challenge in a case raising the same kinds of constitutional and APA claims at issue here. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025). The stakes are even greater here given that the panel's opinion is precedential.

The Court should grant rehearing en banc.

## STATEMENT OF THE CASE

**1.** The Foreign Assistance Act of 1961, Pub. L. No. 87-195, 76 Stat. 424, sets forth principles to guide U.S. foreign assistance policy. The Act "reaffirms

the traditional humanitarian ideals of the American people" and "renews" the nation's "commitment to assist people in developing countries to eliminate hunger, poverty, illness, and ignorance." 22 U.S.C. § 2151(a). Congress has repeatedly appropriated funds for foreign assistance programming to accomplish those goals, including in the Further Consolidated Appropriations Act of 2024 (FCAA). The FCAA appropriates roughly $30 billion in funding for global health programs, development assistance, disaster relief, and promotion of democracy abroad, among other objectives. *See* FCAA, Pub. L. No. 118-47, div. F, tits. II–III, 138 Stat. 460, 739–43. More than half of those appropriations expire by September 30, 2025. Congress did not afford Defendants discretion to spend less than the full amounts appropriated, and Congress specified particular, narrowly defined foreign aid purposes for which precise amounts "shall be made available" by Defendants." *Id.* §§ 7019, 7030–61.

**2.** On January 20, 2025, the President issued an executive order directing that "no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President." Exec. Order No. 14,169, 90 Fed. Reg. 8,619 (Jan. 20, 2025). As the district court

found, Defendants' explicit goal in undertaking these actions was to terminate foreign assistance spending. *See* JA65–66.

**3.** Plaintiffs are a broad spectrum of non-profits, businesses, and membership associations that have long received awards from the State Department or the United States Agency for International Development (USAID) to carry out foreign assistance work authorized by Congress with funds appropriated by Congress. In their complaints filed in two cases that have been consolidated on appeal, Plaintiffs challenge the Executive Order and agency directives implementing it as violating the constitutional separation of powers and the APA and as ultra vires.

On March 10, 2025, the district court granted a preliminary injunction, based (in relevant part) on Plaintiffs' constitutional separation-of-powers claims, and enjoined Defendants from "unlawfully impounding congressionally appropriated foreign aid funds." JA82. Rejecting Defendants' "unbridled view of Executive power," JA36, the court concluded that Plaintiffs were likely to succeed in showing that the executive branch violated the separation of powers by unlawfully refusing to spend "congressionally appropriated funds in violation of Congress's spending power," JA63. The record, the court explained, "show[ed] that Defendants are acting to rescind

or defer the funds Congress has appropriated and have no intent to spend them." JA65. Because "[t]he constitutional power over whether to spend foreign aid is not the President's own—and it *is* Congress's own," Defendants "rel[iance]" on the argument that the President is the "sole organ of the federal government in international relations ... falls short." JA68–69. The court also briefly addressed Plaintiffs' ultra vires and APA claims, but made clear that it was not relying on them as the basis for its injunction requiring Defendants to spend appropriated funds. JA71 n.17; JA72 n.18.

The remaining preliminary injunction factors also favored entry of an injunction against continued impoundment, given  the "immense" and "unrebutted" "irreparable harm to businesses and organizations across the country," JA72, and the fact that there is "generally no public interest in the perpetuation of unlawful agency action," JA76–77 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

**4.** A divided panel of this Court vacated the preliminary injunction. The panel majority first held that Plaintiffs lacked a cause of action to bring their constitutional separation-of-powers claim because it derived from statutory violations. Noting that *Dalton v. Specter*, 511 U.S. 462 (1994), rejected the proposition that "whenever the President acts in excess of his statutory

authority, he also violates the constitutional separation-of-powers doctrine," *id.* at 471, the majority extended *Dalton* to foreclose constitutional claims based on presidential action that contravenes Congress's express directives. Op. 16–24. Next, although Defendants did not raise the issue in their appellate briefs, the majority concluded that Plaintiffs lack an APA cause of action to challenge violations of the 2024 Appropriations Act. The majority held that the Impoundment Control Act (ICA) creates a "scheme of interbranch dialogue" that implicitly forecloses APA claims challenging violations of appropriations statutes as contrary to law. Op. 27. As for Plaintiffs' ultra vires claim, the merits of which also were not briefed on appeal, the panel majority held that Plaintiffs are foreclosed from bringing it, too, because Plaintiffs "point to no specific prohibition the defendants have violated to an extreme and nearly jurisdictional degree." Op. 30.

With respect to irreparable harm, the panel majority concluded that the record was "less developed" about how long grantees could continue to exist without the ability to compete for impounded funds. Op. 32. And it wrote that the remaining preliminary injunction factors did not "strongly" favor an injunction because it was "not clear" how to balance the public interests asserted. Op. 33.

Judge Pan dissented. At the outset, she noted that the Court should have affirmed because, "[o]n appeal, the government challenges neither the district court's factual finding that the President had no intention of spending the appropriated funds, nor its legal conclusion that his withholding of appropriations likely violated the separation of powers." Dissenting Op. 2. The issue whether Plaintiffs "lack a *constitutional* cause of action" was one "that the government did not mention in its opening brief and did not fully develop even in its reply brief." *Id.* Nonetheless, Judge Pan explained, the panel majority "depart[ed] from the norms of impartial appellate review to reverse the district court on a ground that was not properly presented by the government" to "announce a new and sweeping constitutional rule in the President's favor." *Id.* 20.

Further, the dissent explained that decisions of this Court and the Supreme Court "demonstrate that a decision by the Executive Branch to refrain from enforcing a statute—including an appropriations law—presents a constitutional issue subject to judicial review." Dissenting Op. 31–32 (citing *Kendall*, 37 U.S. (12 Pet.) at 612–13; *Aiken Cnty.*, 725 F.3d at 261 n.1). That is the case here, the dissent explained, because "the government undeniably asserted constitutional authority for the President's actions," and thus the

case "necessarily turn[s] on whether the Constitution authorized [those] actions." *Id.* at 43 (quoting *Dalton*, 511 U.S. at 473 (alterations in original)).

Finally, the panel dissent concluded that the remaining preliminary injunction factors favored Plaintiffs: "The government does not dispute that the grantees have shown harm that is both certain and great as well as actual and not theoretical," *id.* at 44 (cleaned up), and the balance of equities and public interest "strongly favor the grantees," *id* at 45.

## REASONS FOR GRANTING REHEARING EN BANC

## I.   The panel majority's holding that Plaintiffs lack a constitutional cause of action conflicts with precedent of this Court and the Supreme Court.

The panel's first holding—that plaintiffs may never bring a constitutional separation-of-powers claim based on the Executive's defiance of congressional mandates, Op. 16–24—merits rehearing. The Supreme Court has held that plaintiffs have an implied right of action to bring separation-of-powers claims. *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). And the Court has further held that "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585–89 (1952)

(affirming a preliminary injunction enjoining the Executive from taking action that fell outside the scope of its constitutional authority).

Although the panel opinion acknowledged this precedent, it stated that a freestanding cause of action is available under the Constitution only to challenge an allegedly unconstitutional statute, *see* Op. 21 n.12, or to challenge executive action that is taken in the "*absence* of *any* statutory authority," Op. 19 (quoting *Dalton*, 511 U.S. at 473). These limitations appear nowhere in the Supreme Court's cases. *See* Op. 24 n.15; Dissenting Op. 23. And, in any event, Defendants made no argument below that any statutory authority supported their refusal to spend the full amounts of foreign assistance funds, relying instead solely on their claim of Constitutional authority. They thus failed to rebut Plaintiffs' argument that the refusal in fact *was* made in the absence of any statutory authority.

The panel majority purported to find support for its deviation from longstanding precedent in *Dalton*, but the panel opinion misapplies that case in a way that will insulate wide swaths of unconstitutional executive action from judicial review. In *Dalton*, the Supreme Court observed that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." 511 U.S. at 473. Accordingly,

"[w]here a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available." *Id.* at 477. Proceeding from this uncontested premise, the panel here held that whenever the President invokes "the laws of the United States of America" to support his actions, the question whether those actions are constitutional falls away, leaving only the question whether statutory authority supports the President's actions. Op. 20 (quoting Exec. Order No. 14169, 90 Fed. Reg. 8,619, 8,619 (Jan. 30, 2025)). Under this reasoning, the President could have evaded judicial review in *Youngstown* simply by invoking a statute—no matter how inapposite—in support of his unconstitutional actions.

*Dalton*, however, does not countenance such a maneuver. Rather, it holds that the President's "abuse of discretion in exerting a power given" to him by Congress does not necessarily give rise to a constitutional claim. 511 U.S. at 474 (quoting *Dakota Central Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919)). That principle has no application in a case like this one, where the claim is not that the President exceeded the scope of some delegated statutory discretion, but rather that the Executive has taken action

that, as the district court found, "was specifically designed to negate congressional … policies." JA71 (internal quotation marks omitted).[1]

The panel's holding that a refusal to comply with statutory mandates cannot give rise to a separation-of-powers violation also directly conflicts with this Court's decision in *Aiken County*. There, this Court held that an agency's refusal to comply with "statutory mandates" violated the separation of powers. *Aiken Cnty.*, 725 F.3d at 259. This Court ordered the Nuclear Regulatory Commission to proceed with a licensing process because the agency had refused to "comply with the law as it has been set by Congress." *Id.* at 257, 259. The Court's decision "rest[ed] on the constitutional authority of Congress,

---

[1] In a decision issued today, a different panel of this Court cited the panel majority here to hold that *Dalton* bars a constitutional challenge to the President's dismantling of the Consumer Financial Protection Bureau. *Nat'l Treasury Empl'ees Union v. Vought*, No. 25-5091, slip op. at 44–47 (D.C. Cir. Aug. 15, 2025). In dissent, Judge Pillard stated that this case (*i.e.*, *Global Health Council*) is more similar to *Dalton* because "a statute directly contemplated the presidential action under consideration," in that "Congress has delegated authority to the President, via the Impoundment Control Act, to propose rescissions or deferrals of appropriated funds." Dissenting op. at 53–54. That is incorrect. The President has not invoked the ICA procedures to propose a rescission or deferral, and Defendants have never defended their actions here on the ground that they reflect an exercise of the President's authority under the ICA. The relevant statute here is the 2024 Appropriations Act, which mandates that USAID and the State Department spend *all* of the appropriated funds on the purposes that Congress specified, with no discretion to do otherwise.

and the respect that the Executive and the Judiciary properly owe to Congress." *Id.* at 267. The panel's holding, which bars plaintiffs from bringing separation-of-powers claims, cannot be reconciled with *Aiken County*.

Insulating executive action from constitutional review in cases where the President willfully and openly flouts Congress's directives will render the judiciary incapable of enforcing the bedrock separation-of-powers principles that undergird our constitutional structure. Such cases are not outliers in this Circuit. *See, e.g.*, *Nat'l Fair Hous. Alliance v. HUD*, 2025 WL 2105567, at *7–8 (D.D.C. July 28, 2025) (finding a likelihood of success on plaintiffs' claims that the President's refusal to fund congressionally required fair housing grants violates the Constitution); *Vera Inst. of Justice v. DOJ*, 2025 WL 1865160, at *16–17 (D.D.C. July 7, 2025) (addressing the merits of a freestanding separation-of-powers claim predicated on the President's alleged refusal to spend congressionally appropriated funds); *Widakuswara v. Lake*, 2025 WL 1166400, at *15 (D.D.C. Apr. 22, 2025). The panel's holding, which flies in the face of longstanding constitutional precedent, will dramatically curtail the judiciary's authority to check facially unconstitutional executive actions that work concrete injury on private parties. Such a transformation of the settled legal landscape demands this Court's en banc review.

**II.    The panel majority's holding that Plaintiffs lack a statutory cause of action to challenge violations of appropriations laws conflicts with binding precedent of this Court and the Supreme Court and is otherwise unsupported.**

The panel majority reached beyond the constitutional analysis underpinning the portion of the preliminary injunction on appeal to opine on an additional claim that was not the basis for the preliminary injunction and that, as the dissent noted, it thus need not have reached: Plaintiffs' claim that Defendants acted contrary to law under the APA. Dissenting Op. 28 n.4; *see also* JA63 (observing that Plaintiffs' constitutional claim—which formed the basis for the district court's impoundment holding—was "distinct in scope" from Plaintiffs' other claims).[2]

The panel's holding that parties may not bring APA challenges to the withholding of funds in violation of an appropriations act conflicts with Supreme Court precedent. In *Train v. City of New York*, 420 U.S. 35 (1975), the Supreme Court affirmed an injunction that rested in part on an APA claim that an agency had violated an appropriations statute by withholding funds.

---

[2] Defendants never argued in the district court or on appeal that Plaintiffs could not bring an APA claim to challenge violations of the 2024 Appropriations Act standing alone (as opposed to APA claims challenging ICA violations). Defendants also did not raise objections to the district court's holding as to Plaintiffs' ultra vires claim in their opening brief.

Before then, too, private plaintiffs in several cases had successfully challenged President Nixon's impoundment of funds. *See, e.g.*, *Guadamuz v. Ash*, 368 F. Supp. 1233 (D.D.C. 1973); *Louisiana v. Weinberger*, 369 F. Supp. 856 (E.D. La. 1973); *Nat'l Council of Cmty. Mental Health Ctrs. v. Weinberger*, 361 F. Supp. 897 (D.D.C. 1973); *State Highway Comm'n v. Volpe*, 479 F.2d 1099 (8th Cir. 1973); *City of New York v. Ruckelshaus*, 358 F. Supp. 669 (D.D.C. 1973).

The panel majority concluded that the Impoundment Control Act (ICA)—a statute designed to *prevent* unauthorized impoundment—stripped private parties of the ability to challenge impoundments, including under the APA. Op. 27. That holding is at odds with the ICA's plain text, which provides that nothing in the Act "shall be construed" as "affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681(3). And this Court has recognized impoundment claims after the passage of the ICA. *See Aiken Cnty.*, 725 F.3d at 261 n.1.

The holding also ignores the purposes of the ICA to reach its implausible conclusion: "[T]he ICA was passed at a time when Congress was united in its furor over presidential impoundments" and sought to stamp out unauthorized impoundments once and for all. *City of New Haven v. United States*, 809 F.2d 900, 906 (D.C. Cir. 1987). "It is simply untenable to suggest" that the very law

that sought to "*control* … presidential impoundments" actually made it far easier to unilaterally impound funds by stripping injured private parties of their preexisting right to challenge unlawful impoundments. *Id.* at 907.

Because the panel opinion is not reconcilable with decisions of the Supreme Court, this Court, and the text of the ICA, en banc review is needed.

## III. The issues presented are of exceptional importance.

Each of the foregoing holdings independently merits en banc review. Together, and taken with the panel's further holding that Plaintiffs cannot challenge an impoundment through an ultra vires claim, the panel's three holdings foreclose *all* avenues for private parties to challenge unlawful impoundments. At a time when myriad cases challenge the Administration's impoundment of congressionally appropriated funds, the issues presented are of exceptional importance and call for the full Court's urgent attention. *See* Fed. R. App. P. 40(b)(2)(D).[3]

---

[3] The panel's conclusions as to the remaining preliminary injunction factors— irreparable injury and the balance of the equities, Op. 31–33—are patently erroneous in light of the district court's findings and Defendants' failure to dispute the grave harms to plaintiffs and to the populations they serve, JA 72– 77; *see* Dissenting Op. 43–46. Thus, they would not suffice to support vacatur of the preliminary injunction absent the panel majority's erroneous holdings on these important issues.

By depriving litigants of a cause of action to challenge unlawful impoundments, the panel majority effectively reallocates Congress's "exclusive power over the federal purse," *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (Kavanaugh, J.) (citation omitted), to the Executive Branch. "It is no overstatement to say that our constitutional system of separation of powers will be significantly altered because the [panel majority] allows the Executive Branch to disregard federal law in the manner asserted in this case." Dissenting Op. 47 (quoting *Aiken*, 725 F.3d at 267) (cleaned up).

Indeed, the volume of cases challenging unlawful impoundment currently pending in this Circuit alone illustrates that this is a matter that urgently warrants rehearing en banc. *See, e.g.*, Compl. at 21–23, *Am. Ctr. for Int'l Labor Solidarity v. Chavez-Deremer*, No. 1:25-cv-01128 (D.D.C.); Compl. at 41–43, *Appalachian Voices v. EPA*, No. 1:25-cv-01982 (D.D.C.); Amended Compl. at 53–54, *Climate United Fund v. Citibank*, No. 1:25-cv-00698 (D.D.C); Compl. at 44–50, *Harris Cnty. v. Kennedy*, No. 1:25-cv-01275 (D.D.C.); Compl. at 17–18, *Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239 (D.D.C.); Compl. at 30–32, *Nat'l Fair Housing Alliance v. HUD*, No. 1:25-cv-01965 (D.D.C.); Amended Compl. at 32–33, 39, *Nat'l Nurses United v. Kennedy*, No.

1:25-cv-01538 (D.D.C.); Amended Compl. at 97–98, *Nat'l Urban League v. Trump*, No. 1:25-cv-00471 (D.D.C.); Compl. at 63–64, *Planned Parenthood of Greater N.Y. v. HHS*, No. 1:25-cv-01334 (D.D.C.); Amended Compl. at 23–26, 28–32 , *RFE/RL v. Lake*, No. 1:25-cv-00799 (D.D.C.); Amended Compl. at 33–35, *S. Ed. Found., Inc. v. U.S. Dep't of Ed.*, No. 1:25-cv-01079 (D.D.C.); Compl. at 23–26, *Vera Inst. of Justice v. DOJ*, No. 1:25-cv-01643 (D.D.C.); *see also Citizens for Responsibility & Ethics in Washington v. OMB*, No. 25-5266, at 1 & n.1 (D.C. Cir. Aug. 9, 2025) (Henderson, J., statement respecting the denial of a stay pending appeal) (noting the "slew of cases" that "challenge the President's ability to unilaterally freeze or 'impound' spending" and citing cases).

Finally, the scale and time-sensitivity of the appropriations at issue can hardly be overstated. Defendants' refusal to spend foreign assistance appropriations will result in an estimated 2.4 million additional deaths each year, with 14 million additional deaths by 2030. *See* Daniella Medeiros Cavalcanti, et al., *Evaluating the impact of two decades of USAID interventions and projecting the effects of defunding on mortality up to 2030*, The Lancet (Jun. 30, 2025). The full Court's prompt review is warranted.

# CONCLUSION

This Court should grant the petition for rehearing en banc.

Dated: August 15, 2025

Respectfully Submitted,

*/s/ Lauren E. Bateman*
Lauren E. Bateman
Nicolas A. Sansone
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for AIDS Vaccine*
*Advocacy Coalition, et al.*

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(301) 823-1148

William C. Perdue
Sally L. Pei
Stephen K. Wirth
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000

*Counsel for Global Health Council,*
*et al.*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 40(d)(3)(A), that this petition contains 3,872 words and complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century font.

Dated: August 15, 2025            */s/ Daniel F. Jacobson*

Daniel F. Jacobson

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 15, 2025                    */s/ Daniel F. Jacobson*
                                          Daniel F. Jacobson