Nos. 25-5097, 25-5098

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

GLOBAL HEALTH COUNCIL, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

_____

AIDS VACCINE ADVOCACY COALITION, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

Defendants-Appellants.
_____
On Appeal from the United States District Court
for the District of Columbia
_____

BRIEF OF ALAN B. MORRISON AS AMICUS CURIAE
IN SUPPORT OF PETITION FOR REHEARING EN BANC
_____

Alan B. Morrison
2000 H Street NW
Washington D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu
Counsel for the Amicus

August 18, 2025

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................ ii

**INTEREST OF THE AMICUS** ...........................................................................1

**SUMMARY OF ARGUMENT** ..........................................................................2

**ARGUMENT** .......................................................................................................4

    **THE COURT SHOULD GRANT REHEARING EN BANC** ...................4

        **Plaintiffs Have a Cause of Action** ........................................................5

        **Plaintiffs' Claims Are Not Precluded from Judicial Review by the ICA** ........................................................................................................7

**CONCLUSION**..................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bowsher v. Synar,* 478 U.S. 714 (1986)...................................................................7

*Carnahan v. Maloney,* S. Ct. No. 22-425 (2023) .....................................................9

*City of New Haven v. United States,* 809 F.2d 900 (D.C. Cir. 1987) ..1, 3, 5, 7, 9–10

*Clinton v. City of New York,* 524 U.S. 417 (1998) ...................................................3

*Dalton v. Specter,* 511 U.S. 462 (1994).................................................................2, 6

*In re Aiken County,* 725 F.3d 255 (D.C. Cir. 2013) ................................................10

*INS v. Chadha,* 462 U.S. 919 (1983) ......................................................................10

*State Highway Comm'n of Mo. v. Volpe*, 479 F.2d 1099 (8th Cir. 1973) .................1

*Train v. City of New York*, 420 U.S. 35 (1975) ..................................................1, 5–6

*Train v. Campaign Clean Water, Inc.*, 420 U.S. 136 (1975).....................................1

*Trump v. CASA, Inc.,* 145 S. Ct. 2540 (2025)...........................................................6

*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1953)...........................2, 6

**Statutes**

Impoundment Control Act of 1974, 2 U.S.C. § 681..............................................1, 7

    Section 683 .......................................................................................................8

    Section 684 .......................................................................................................8

    Section 687 .....................................................................................................10

Pub. L. 100–119, 101 Stat 754 (1987).....................................................................10

# INTEREST OF THE AMICUS[1]

This brief is submitted by Alan B. Morrison who is an associate dean at the George Washington University Law School where he teaches constitutional law. This brief focuses on the holding of the panel majority that the Impoundment Control Act of 1974, 2 U.S.C. §§ 681, et seq. (ICA), eliminates any right of private parties to sue over claims that federal agencies have wrongfully refused to spend funds appropriated by Congress.

Amicus has considerable direct experience regarding impoundments both before and after that Act was passed. He was counsel for twenty-four Senators who filed an amicus brief (and invited to present oral argument) opposing the impoundment in *State Highway Comm'n of Mo. v. Volpe*, 479 F.2d 1099 (8th Cir. 1973). He was lead counsel or co-counsel in a number of other impoundment challenges both before and after the ICA was enacted, including *Train v. Campaign Clean Water, Inc.,* 420 U.S. 136 (1975) (the companion case to *Train v. City of New York*, 420 U.S. 35 (1975)), and *City of New Haven v. United States,* 809 F.2d 900 (D.C. Cir. 1987). He also testified before the Senate Judiciary Committee (with Ralph Nader) at the hearings that led to the passage of the ICA.

---

[1] No person other than amicus authored this brief in whole or in part or contributed money that was intended to support the preparation or submission of this brief.

1

## SUMMARY OF ARGUMENT

This Court should grant rehearing en banc because the panel majority seriously erred in overturning the District Court ruling that defendants improperly impounded appropriated funds which plaintiffs are eligible to receive. In doing so, the panel committed two interrelated errors.

First, it concluded that plaintiffs had no cause of action, despite the fact that both before and after the enactment of the ICA, private parties brought suit and prevailed in cases alleging unlawful impoundments. *Dalton v. Specter,* 511 U.S. 462 (1994), relied on by the panel, was not an impoundment case and considered a statute in which the challenged action was solely that of the President, unlike this case where agency officials have unlawfully implemented these impoundments. The fact that the agencies may have been implementing an order of the President no more insulates these claims from judicial review than did the claim against the Secretary of Commerce, who carried out President Truman's order to take control of the steel mills in *Youngstown Sheet & Tube Co. v Sawyer,* 343 U.S. 579 (1952).

Second, the majority held that the ICA eliminated any impoundment claim that a private party might have because Congress intended to make the Comptroller General the sole party who was entitled to go to court to force agencies to spend funds appropriated by Congress. There is not a word in the ICA that hints that the

law would have that preclusive effect when the whole thrust of the Act was to make it more difficult, not easier, for the President to refuse to spend appropriated funds, let alone to overturn all the prior cases to the contrary. That result is also directly inconsistent with this Court's post-ICA decision in *City of New Haven v. United States,* 809 F.2d 900 (D.C. Cir. 1987), that set aside an attempt to defer the spending of funds at issue there.

Unless reviewed en banc, the panel decision will be a green light for this Administration to engage in wholesale refusals to spend appropriate funds whenever the President disagrees with the policy choices made by Congress. And it may do so without even having to claim that the refusal was authorized by law or that the President has the constitutional authority to engage in unilateral impoundments. It is undisputed that, under *Clinton v. City of New York,* 524 U.S. 417 (1998), Congress cannot constitutionally authorize the President to refuse to spend funds because he disagrees with the decision to appropriate them, yet if the panel is correct, that is exactly what Congress permitted when it enacted the ICA and made the President's unilateral refusals to spend non-reviewable and hence effective as a practical matter, even though unconstitutional.

# ARGUMENT

## THE COURT SHOULD GRANT REHEARING EN BANC.

The merits issue in this case is whether the President has the legal authority to refuse to spend the money that Congress has appropriated. He does not. Congress enacted the Impoundment Control Act in 1974 both to put an end to unilateral executive impoundments and to create a lawful path by which the President may obtain permission from Congress not to spend all the money that Congress has appropriated. He has not followed that path in this case, and therefore the withholding of these funds is unlawful.

This case does not just involve an isolated instance of impoundment, but is part of a plan by President Donald J. Trump to shrink the size of the federal government. The plan does not involve having Congress repeal the laws creating federal agencies and authorizing them to carry out various functions. Rather, the President has acted unilaterally in various ways to achieve what he considers to be desirable policy goals, such as by directing the cancellation of federal contracts, the revoking of federal grants, the wholesale firing of federal employees with no plans to hire replacements, and the shuttering of agencies by use of administrative leave and other practices that prevent them from carrying on their statutorily assigned functions. Each of those actions has the effect of reducing federal spending, with

4

the inevitable serious injuries to the intended beneficiaries of those programs, all without the approval of Congress. As a result, the actions challenged in this case and many others now pending against the Trump administration have a common unlawful impoundment flaw.

The Government does not dispute that appropriated funds have been withheld in this case without a statutory basis for doing so, but instead argued, and the panel agreed, that plaintiffs have no cause of action and that the ICA makes lawsuits by the Comptroller General the exclusive method of challenging unlawful impoundments. Either ground would end all private litigation of impoundment cases and would turn the ICA upside down, from a means of limiting impoundments, to creating a get-out-of-jail-free card for a President whose spending preferences differ from those enacted by Congress. Those rulings are seriously wrong and of enormous significance.

**Plaintiffs Have a Cause of Action.**

The panel's conclusion that there is no cause of action for private parties who sued to overturn a rescission like these is belied by the many pre-ICA cases, such as *Train v. City of New York*, 420 U.S. 35 (1975), and the post-ICA decision in *City of New Haven v. United States,* 809 F.2d 900 (D.C. Cir. 1987), in which challenges

5

similar to this one were upheld. At the very least, en banc rehearing is needed to justify that departure from binding precedent.

Even without the prior cases, the panel erred. These complaints alleged three causes of action, any one of which would suffice. Because the President is not an agency under the Administrative Procedure Act, there could be no APA claim against him. But the other defendants are subject to the APA, and plaintiffs can obtain full relief with a court order directing them to cease the withholding. The Supreme Court in *Trump v. CASA, Inc.,* 145 S. Ct. 2540, 2554 n. 10 (2025), made clear that the limits applicable to suits against the President are not applicable to suits under the APA.

The panel placed great emphasis on *Dalton v. Specter,* 511 U.S. 462 (1994), where the Court held that procedural irregularities made by agencies that led to a presidential action were not reviewable when the President's ultimate decision was committed to his discretion. Here the applicable law does not give the President the discretion not to spend appropriated funds, and so *Dalton,* which had nothing to do with impoundments, should not be read to overrule impoundment cases like *Train v. City of New York*, 420 U.S. 35 (1975).

The more directly applicable precedent is *Youngstown Sheet & Tube Co. v Sawyer,* 343 U.S. 579 (1952), in which the defendant was an agency head acting at

6

the direction of the President, and the Court had no difficulty upholding the claim that the President lacked statutory authority to take control of the steel mills. Whether *Youngstown* is viewed as a ruling on the President's statutory powers, or a holding that, because he did not have a statutory basis to act, his executive order was unconstitutional, is of no consequence. So here, contrary to the panel's conclusion (Op. 24), it is irrelevant whether the illegality is that the President exceeded his constitutional or statutory powers because the result in either case is the same.

### Plaintiffs' Claims Are Not Precluded from Judicial Review by the ICA.

The Government's principal argument in this Court is that the passage of the ICA wiped out the right of private parties to sue to halt unlawful rescissions. According to the Government, and now the panel, the ICA effectively overturned all the prior cases that allowed suits to prevent impoundments. Moreover, if the panel is correct, this Court (and the Department of Justice) failed to note that momentous change in 1987 where the challenge to the deferral at issue in *City of New Haven* was sustained.

The goal of the ICA, as further reflected in the dissenting opinion, was to prevent unilateral rescissions, which is directly contrary to the panel's conclusion that private parties could no longer sue to prevent impoundments. There is also no textual support for that conclusion, and the disclaimer in 2 U.S.C. § 681 is to the

7

contrary, providing that the ICA "shall not be construed as …(3) affecting in any way the claims or defenses of any party to litigation concerning any impoundment" (emphasis added).

The panel noted that 2 U.S.C. § 687 authorizes the Comptroller General, an agent of Congress, *Bowsher v. Synar,* 478 U.S. 714 (1986), if he determines that an agency has not made funds available for obligation, to bring suit "to require such budget authority to be made available for obligation." According to the panel, Congress concluded that this remedy was the best way to deal with allegedly unlawful impoundments, and so it did not create parallel private remedies: "it does not make sense that the Congress would craft a complex scheme of interbranch dialogue but sub silentio also provide a backdoor for citizen suits at any time and without notice to the Congress of the alleged violation." Maj Op. at 27–28. But that conclusion has it precisely backwards: there was a substantial history of private plaintiffs successfully suing to stop unlawful impoundments, and the proper question is whether there is a shred of evidence that the ICA in general, and section 687 in particular, silently overturned them. The answer is no.

There are several additional significant flaws in the majority's argument. The Comptroller General must first learn about the unlawful withholdings, which is made more difficult when the President, as he did here, fails to send the messages required by sections 683 and 684. Then he must investigate the alleged withholding to

8

determine whether it is lawful, and if not, he must file an explanation for his conclusion with the Speaker of the House of Representatives and the President of the Senate, and then wait another 25 days before filing suit. Even if a suit is successful, the ICA does not assure that the beneficiaries of federal programs will be able to use any favorable judgment on the basic issue of impoundment to obtain the funds that were illegally withheld.[2] In addition, the law is entirely discretionary, and when Congress is controlled by the President's party, it is highly unlikely that the Comptroller General will sue the President, let alone bring suits to cover every impoundment. In short, if Congress wanted to replace private enforcement with the Comptroller General, it would never have provided such a limited substitute.[3]

Finally, Congress's attitude toward impoundment is exemplified in the aftermath of the *City of New Haven* decision. As originally enacted, the deferral

---

[2] The majority suggested in note 16, p. 28, that private parties could intervene (as of right?) in cases brought by the Comptroller General. There is no such right in the ICA, and the majority does not explain why Congress would forbid private lawsuits, but allow wholesale intervention in suits brought by the Comptroller General.

[3] Given its long history of opposing efforts by Congress to bring suits against the Executive Branch, the Department of Justice would likely move to dismiss any suit under section 687. *See Carnahan v. Maloney,* S. Ct., No. 22-425 (2023), in which the question presented by the Solicitor General was "Whether individual Members of Congress have Article III standing to sue an executive agency to compel it to disclose information that the Members have requested under 5 U.S.C. 2954." The petition was granted and then the case was dismissed after plaintiffs moved to dismiss on mootness grounds.

9

authority in section 684 was subject to a one-House veto, which was subsequently declared unconstitutional in *INS v. Chadha,* 462 U.S. 919 (1983). The Government argued that the deferral authority nonetheless survived, but this Court had no trouble concluding that the deferral provision could not stand on its own, with no check, because section 684

> was designed specifically to provide Congress with a means for controlling presidential deferrals. As a consequence of the Supreme Court's decision in *Chadha,* however, that section has been transformed into a license to impound funds for policy reasons. This result is completely contrary to the will of Congress, which in amending the Anti-Deficiency Act sought to *remove* any colorable statutory basis for unchecked policy deferrals. We cannot imagine that Congress would have acted in complete contravention of its intended purposes by enacting section [684] without a legislative veto provision.

*City of New Haven*, 809 F.2d at 909 (emphasis in original). Shortly thereafter, Congress amended section 684 to its current version, which allows the President to make limited non-policy deferrals, Pub. L. 100–119, 101 Stat 754, section 206 (1987), yet the panel decision would allow them to be used on a wholesale basis unless the Comptroller General decided to sue over each of them. *See also In re Aiken County,* 725 F.3d 255, 260 (D.C. Cir. 2013) where this Court issued a writ of mandamus against the Nuclear Regulatory Commission which had refused to spend funds that Congress had directed it to spend, observing that "the President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress."

10

It is simply not credible that the Congress that enacted the ICA in 1974, in response to the unlawful impoundments of President Nixon, and the Congress that strengthened the ICA in 1987, would have included in the ICA provisions that would essentially enable the President to engage in wholesale rescissions when every portion of the ICA points in the other direction.

## CONCLUSION

For the foregoing reasons and those set forth in the petition for rehearing en banc filed by the plaintiffs, the Court should grant rehearing en banc.

Respectfully Submitted,

Alan B. Morrison
2000 H Street NW
Washington D.C. 20052
(202) 994 7120
abmorrison@law.gwu.edu
Counsel for the Amicus

August 18, 2025

11

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2518 words, which is less than the 2600 words allowed by FRAP 29(b)(4). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Alan B. Morrison*
Alan B. Morrison