ORAL ARGUMENT HELD JULY 7, 2025

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Global Health Council, *et al.*,
    Plaintiffs-Appellees,

v.

Donald J. Trump, *et al.*,
    Defendants-Appellants.
_____

AIDS Vaccine Advocacy Coalition, *et al.*,
    Plaintiffs-Appellees,

v.

United States Department of State, *et al.*,
    Defendants-Appellants.

Nos. 25-5097, 25-5098

---

**RESPONSE TO MOTION FOR STAY PENDING REHEARING EN BANC AND CROSS-MOTION TO STAY THE PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO ISSUE THE MANDATE EXPEDITIOUSLY**

Pursuant to Federal Rule of Appellate Procedure 27, the government hereby files its response to plaintiffs' motion for a stay "of the panel opinion and judgment pending en banc review." Mot. 1. In addition, the government

cross-moves for a stay of the district court's preliminary injunction or, in the alternative, to issue the mandate expeditiously.[1]

1. This case arises out of a review of the United States' foreign-assistance programs that was directed by the Secretary of State and conducted by the State Department and U.S. Agency for International Development (USAID). That review examined preexisting foreign-assistance awards for their efficiency and consistency with the United States' foreign policy. As a result of the review, the agencies ultimately determined to retain hundreds of preexisting USAID awards and thousands of preexisting State Department awards; the rest of the awards were terminated. *See* J.A. 43. Since that review, the agencies have been engaged in a broader evaluation of the agencies' organization and implementation of foreign-assistance programs, which may inform the agencies' determinations regarding the obligation of foreign-assistance funds going forward and whether to request that Congress rescind any such funds. *See generally* Opening Br. 13.

---

[1] Consistent with Fed. R. App. P. 8, the government has filed a motion in district court to stay the relevant portion of the preliminary injunction pending issuance of the mandate. *See AVA* Dkt. No. 128; *GHC* Dkt. No. 117. Plaintiffs have opposed that motion. The government will inform this Court promptly when the district court acts on the motion.

While the agencies' review of awards was ongoing, plaintiffs—organizations that receive, or have members who receive, federal funds for foreign-assistance work—brought this suit. They have contended generally that the agencies are acting unlawfully by failing to expend all of the funds that Congress has appropriated, including most recently in the Further Consolidated Appropriations Act, 2024, for foreign-assistance programs. Those appropriated funds include many billions of dollars for various foreign-assistance programs. *See generally* Opening Br. 6-8. Some of those funds remain available until September 30, 2025, although other funds appropriated by the statute remain available until later dates or until expended. *See* Opening Br. 8.

The district court granted plaintiffs a preliminary injunction and ordered, in relevant part, that defendants must "make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024." J.A. 82. As the government has explained, the district court's preliminary injunction would (if left in place) significantly interfere with the Executive Branch's ability to take lawful actions, including its ability to

follow statutory procedures to engage with Congress regarding the rescission of appropriated funds. *See* Opening Br. 42-46.

The government thus appealed the district court's preliminary injunction. In addition, the government moved to expedite the appeal, explaining that the injunction will "require the government to make available covered funds before they expire, which will happen as soon as September 30, 2025"; that compliance with the injunction would require the government "to begin obligating and expending funds, potentially irretrievably, before that deadline"; and that the government thus required resolution well in advance of that date in order "to receive effective relief if it prevails on appeal." Unopposed Mot. to Expedite Appeal 3 (Apr. 28, 2025). This Court granted that motion and set an expedited briefing and argument schedule.

On August 13, this Court vacated the preliminary injunction in relevant part. The Court concluded that plaintiffs "lack a cause of action to bring any of th[e] claims" relied on by the district court: a "constitutional claim that the government violated separation-of-powers principles," a statutory claim "brought under the APA based on a violation of the [Impoundment Control Act (ICA)]," and an "ultra vires claim." Op. 15. Consistent with Federal Rule of Appellate Procedure 41(b)'s default rule, the Court also entered an

4

order withholding issuance of the mandate "until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc"; that order was "without prejudice to the right of any party to move for expedited issuance of the mandate for good cause shown." Order (Aug. 13, 2025).

Plaintiffs have now filed a petition for rehearing en banc and have (notwithstanding the Court's order withholding issuance of the mandate) moved "to stay the panel's judgment and opinion pending disposition of the en banc petition." Mot. 3. The Court has since denied plaintiffs' request for an administrative stay, explaining that "the preliminary injunction that requires the government to obligate the appropriated funds remains in effect" because "this court's mandate has not yet issued." Order (Aug. 20, 2025).

2. To justify a stay, the moving party must demonstrate that it is likely to succeed on the merits, that it will face irreparable injury absent a stay, and that the balance of equities and public interest support a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). In addition, the Court may "expedit[e] issuance of the mandate for good cause shown." D.C. Cir. R. 41(a)(1).

Plaintiffs' motion for a stay should be denied. Because the government is likely to succeed—indeed, has already succeeded—on the merits of this

5

appeal and will be irreparably injured if the erroneous preliminary injunction remains in effect through September 30, this Court should stay the preliminary injunction or, in the alternative, issue the mandate expeditiously.

 a. The government is likely to succeed on the merits of this appeal. The panel has already given this appeal full consideration and has concluded that plaintiffs lack a cause of action to advance their claims regarding the asserted obligation to expend funds. Plaintiffs nonetheless contend (at 7) that they are likely to prevail on the merits of this appeal because "this appeal must be reheard en banc" and plaintiffs "will succeed on the merits" of any en banc review. But "rehearing en banc is not favored." Fed. R. App. P. 40(a). And as the government has explained in its concurrently filed response to plaintiffs' en banc petition, this case does not warrant the extraordinary step of en banc review.

 Plaintiffs' inability to demonstrate that they will ultimately succeed in this appeal is only underscored by the divergence between the arguments identified in plaintiffs' stay motion as grounds on which the district court's opinion could be affirmed and the grounds on which they assert en banc review is warranted. In their stay motion, plaintiffs briefly contend that the panel erroneously concluded that they lack a freestanding constitutional

6

cause of action, *see* Mot. 9-13—the single issue on which plaintiffs both argue that en banc review is warranted and that would, in plaintiffs' telling, provide a basis for affirming the preliminary injunction. (That argument is, for the reasons explained in the panel opinion and the government's response to plaintiffs' en banc petition, both incorrect and not worthy of review by the full Court.)

But plaintiffs also devote substantial attention to relitigating other issues on which they lost before the panel, including whether the panel should have declined to decide whether plaintiffs had advanced a bona fide constitutional claim, *see* Mot. 7-9; whether the APA preclusion question was properly presented for the panel's review, *see* Mot. 13-14; and whether the panel properly addressed (and, if so, properly rejected) plaintiffs' ultra vires claims, *see* Mot. 17-20. The panel opinion considered and resolved those arguments, and plaintiffs do not provide any basis for concluding that the panel overlooked any important feature of those arguments or otherwise erred. But more importantly for present purposes, plaintiffs nowhere contend that any of those questions—which involve the case-specific application of generally accepted legal principles—is worthy of the en banc court's review. Plaintiffs thus cannot plausibly argue that they are likely to

succeed on the basis of those arguments—nor can plaintiffs leverage those asserted errors into an order allowing the district court's injunction to remain in effect pending en banc review.

And conversely, plaintiffs also devote substantial attention to arguing that the panel erred in concluding that plaintiffs cannot bring their APA contrary-to-law claims. *See* Mot. 14-17. (That argument is, again, incorrect on the merits for the reasons stated in the panel opinion and the government's response to plaintiffs' en banc petition.) But although plaintiffs assert that question is worthy of en banc review, plaintiffs also contend that the "only basis for the district court's injunction" was plaintiffs' constitutional claim, not their statutory one. Plaintiffs are wrong about that, *see* Op. 15-16 n.6, but by plaintiffs' own lights, the district court's injunction could not be affirmed on the basis of plaintiffs' statutory claims. The possibility of en banc review of those claims thus cannot provide any justification—on plaintiffs' own telling—for allowing that injunction to remain in effect notwithstanding the panel's opinion.

b. The government and the public will be irreparably harmed if the district court's preliminary injunction is permitted to remain in effect. The injunction significantly interferes with the agencies' ability to take lawful

8

actions regarding the proper disposition of appropriated funds, including their ability to follow statutory procedures to engage with Congress regarding the rescission of funds. *See* Opening Br. 42-46. That injunction thus undermines the Executive Branch's unquestioned Article II authority to determine how best to implement the law—and it does so in the foreign-affairs context, in which the Executive's authority is particularly strong. *Cf. American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003). And the injunction pretermits the inter-Branch processes spelled out in the ICA, thereby improperly injecting the judiciary into foreign policy decisions that have "long been held to belong in the domain of political power not subject to judicial intrusion or inquiry." *Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948).

Moreover, if the government's (and the panel's) position is ultimately vindicated, there would be no guarantee that any funds that the government obligated or disbursed in the interim would be retrievable after the fact. *See Department of Educ. v. California*, 145 S. Ct. 966, 968-69 (2025) (crediting "the Government's representation that it is unlikely to recover the grant funds once they are disbursed"). Those concerns are particularly acute here

9

given plaintiffs' own representations about their financial insolvency and given that many grant recipients (or subrecipients) reside overseas.

In addition, a stay of the district court's preliminary injunction, or expedited issuance of the mandate, is particularly warranted here given the procedural history of this case. As explained, the government requested expedited treatment of this appeal for the express purpose of receiving a decision from this Court sufficiently in advance of September 30 to allow for effective relief. The Court granted that request, and the panel has now carefully considered this appeal—on the merits and with the benefit of full briefing and argument—and issued a thorough and well-reasoned opinion explaining some of the errors that underlie the district court's injunction. At this point, requiring the government to continue to comply with the injunction notwithstanding the panel opinion would undermine the expedited treatment of this appeal and would effectively vitiate the government's right to appellate review of the district court's incorrect injunction.

Moreover, plaintiffs have not meaningfully contended—and could not reasonably argue—that the en banc Court should or could conduct plenary en banc proceedings before funds begin to expire on September 30. In these circumstances (and particularly in light of the procedural history of this

appeal), it is appropriate to treat the panel opinion as conclusive at least for the purpose of determining whether the government is required to obligate substantial funds to comply with the district court's injunction while plaintiffs continue to pursue further review. Moreover, some of the funds covered by the court's injunction remain available after September 30. Thus, even if the Court were to conclude that en banc review of the panel's legal conclusions is warranted, it could conduct that review on an ordinary timeline and with regard to the funds remaining available after September 30 without disturbing the panel's conclusion as to the funds that expire on that day.

c. By contrast, plaintiffs' and the public's interest in continued enforcement of the district court's preliminary injunction—which the panel has already held to be erroneously entered—is relatively small.

Even setting aside the fact that plaintiffs cannot plausibly claim a legitimate interest in receiving funds under an injunction they lack any legal ability to seek, that injunction was not particularly effective at avoiding plaintiffs' alleged injuries. The court did not order the agencies "to continue to contract with [plaintiffs]," but instead directed that the covered foreign-assistance funds be made available for obligation to someone, not necessarily to plaintiffs. *See* J.A. 80-82. Under the injunction, the Executive Branch was

11

permitted to make all of the foreign-assistance funds at issue available to entities that have no connection to any of the plaintiffs or their members.

Moreover, the government continues to disburse substantial foreign-assistance funds, including to plaintiffs. The government has thus made payments to plaintiffs and other funding recipients for past work already completed. *See, e.g.*, J.A. 245-46. And the government has continued to disburse funds on over 3,000 awards retained by the State Department and USAID. *See* J.A. 43. In all events, Congress has ample political tools to address any perceived problem in the Executive Branch's obligation and expenditure of funds, including by altering existing or future appropriations or by engaging in its traditional oversight functions.

Respectfully submitted,

DANIEL TENNY

 */s/ Sean R. Janda*
SEAN R. JANDA
BRIAN J. SPRINGER
(202) 514-3388
  Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, D.C. 20530

AUGUST 2025

## CERTIFICATE OF COMPLIANCE

This response and cross-motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2227 words. This response and cross-motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

                                                */s/ Sean R. Janda*
                                                Sean R. Janda

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, I electronically filed the foregoing response and cross-motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                               */s/ Sean R. Janda*
                                               Sean R. Janda