# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

GLOBAL HEALTH COUNCIL, *et al.*,
*Appellees*,

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES OF AMERICA, *et al.*,
*Appellants*.

On Appeal from the United States District Court
for the District of Columbia

## BRIEF OF LAW SCHOLARS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES' PETITION FOR REHEARING EN BANC

Susannah Landes Weaver
ENVOLVE LAW
5100 Wisconsin Ave. NW, Suite 306
Washington, DC 20016
(202) 556-7898

Jonas Monast
Patrick R. Jacobi
CENTER FOR APPLIED ENVIRONMENTAL
  LAW AND POLICY
712 H Street NE, Suite 90006
Washington, DC 20002
(703) 405-8950
patrick.jacobi@caelp.org

*Counsel for Law Scholars* Amici Curiae

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

A. *Parties and Amici.* Except for the following and any other *amici* who had not yet entered an appearance in this case as of this filing, all parties and *amici curiae* appearing before this Court are listed or referenced in the Supplement to Petition for Rehearing En Banc, Doc. 2130341 (filed Aug. 15, 2025): Physicians for Human Rights, Dr. Dvora Joseph Davey, Dr. Salim S. Abdool Karim, and Mary "Doe." *See* Doc. 2131143.

B. *Rulings Under Review.* References to the ruling under review appear in the Supplement to Petition for Rehearing En Banc, Doc. 2130341.

C. *Related Cases.* A list of related cases appears in the Supplement to Petition for Rehearing En Banc, Doc. 2130341.

Dated: August 21, 2025

*/s/ Patrick R. Jacobi*
Patrick R. Jacobi

## CIRCUIT RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rule 26.1, counsel for Law Scholars *Amici Curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

Dated: August 21, 2025

*/s/ Patrick R. Jacobi*
Patrick R. Jacobi

# RULE 29 STATEMENTS

Counsel for Law Scholars *Amici Curiae* certifies that all Plaintiffs-Appellees consent to the relief requested herein and that Defendants-Appellants take no position.

Pursuant to Fed. R. App. P. 29(a)(4), Counsel for Law Scholars *Amici Curiae* states that no party or party's counsel authored this brief in whole or in part, and that no other person besides Law Scholars *Amici* or their counsel contributed money intended to fund the preparation or submission of this brief.

Pursuant to D.C. Cir. R. 29(d), Counsel for Law Scholars *Amici* states that a separate brief is necessary to allow Law Scholars *Amici* to set forth their specific perspective on the issues presented. These scholars are constitutional- and administrative-law experts who have a strong interest in the development of the consistent application of law in the federal courts. Counsel for Law Scholars *Amici* understands that there are other *amici* in support of Appellees, but, to date, no *amici* filing on behalf of Appellees has addressed the points raised herein.

Dated: August 21, 2025                                  */s/ Patrick R. Jacobi*
                                                         Patrick R. Jacobi

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES............... ii

CIRCUIT RULE 26.1 CORPORATE DISCLOSURE STATEMENT .................... iii

RULE 29 STATEMENTS ......................................................................... iv

TABLE OF CONTENTS ...........................................................................v

TABLE OF AUTHORITIES......................................................................... vi

GLOSSARY ......................................................................................... ix

INTEREST OF *AMICI CURIAE* .................................................................1

ARGUMENT ........................................................................................1

I.    *Dalton* Does Not Apply Here, and the Panel's Misapplication Leads to Exceptional, Absurd Results...........................................................6

II.   En Banc Review Is Necessary to Preserve the Executive Branch's Duty to Faithfully Execute Laws. ..............................................................7

III.  En Banc Review Is Necessary to Preserve Justice Jackson's Separation-of-Powers Analysis in *Youngstown*. ....................................................9

IV.   En Banc Review Will Allow Better Alignment of Judicial Review of Executive Branch Actions. .........................................................10

CONCLUSION....................................................................................12

CERTIFICATE OF COMPLIANCE .................................................................14

CERTIFICATE OF SERVICE .....................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Biden v. Nebraska*,
600 U.S. 477 (2023) ...................................................................... 11, 12

*Clinton v. City of New York*,
524 U.S. 417 (1998) ............................................................................ 5

*Dalton v. Specter*,
511 U.S. 462 (1994) ......................................................................... 2, 6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ............................................................................ 4

*In re Aiken Cnty.*,
725 F.3d 255 (D.C. Cir. 2013) ........................................................... 3

*Kendall v. United States ex rel. Stokes*,
37 U.S. 524 (1838) .............................................................................. 8

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......................................................................... 11

*Myers v. United States*,
272 U.S. 52 (1926) .............................................................................. 5

*New York v. United States*,
505 U.S. 144 (1992) ............................................................................ 5

*Springer v. Gov't of the Philippine Islands*,
277 U.S. 189 (1928) ............................................................................ 5

*Trump v. United States*,
603 U.S. 593 (2024) ............................................................................ 8

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......................................................................... 11

*Youngstown Sheet & Tube Co. v. Sawyer*,
 343 U.S. 579 (1952) ..................................................................5, 9, 10

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 1 ..........................................................8

**Statutes**

Further Consolidated Appropriations Act of 2024,
 Pub. L. No. 118-47, 138 Stat. 460 ....................................................8

**Executive Branch Materials**

Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025)....................................2

Remarks and a Question-and-Answer Session at the Future Investment Initiative
 Priority Summit in Miami Beach, Florida, 2025 Daily Comp. Pres. Doc. 280
 (Feb. 19, 2025)................................................................................2

U.S. Dep't of the Treasury, Joint Statement of Janet L. Yellen, Sec'y of the
 Treasury, and Shalanda D. Young, Dir. of the Office of Mgmt. and Budget, on
 Budget Results for Fiscal Year 2024 (Oct. 18, 2024),
 https://home.treasury.gov/news/press-releases/jy2657 ......................................4

**Other Authorities**

Andrew Kent, Ethan J. Leib, & Jed Handelsman Shugerman, *Faithful Execution
 and Article II*, 132 Harv. L. Rev. 2111 (2019)....................................8

Appropriations Comm. Democrats, Trump's Unprecedented Funding Freeze Hits
 Communities Across America (updated Apr. 29, 2025),
 https://democrats-appropriations.house.gov/trumps-unprecedented-funding-
 freeze-hits-communities-across-america..............................................4

Fed. R. App. P. 40(b)(2) ...........................................................5

Jodi L. Short & Jed H. Shugerman, *Major Questions About Presidentialism:
 Untangling the "Chain of Dependence" Across Administrative Law*, 65 B.C. L.

Rev. 511 (2024) .................................................................................11

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Appropriations Act | Further Consolidated Appropriations Act of 2024 |
| GAO | Government Accountability Office |
| ICA | Impoundment Control Act |
| JA | Joint Appendix |
| USAID | U.S. Agency for International Development |

## INTEREST OF *AMICI CURIAE*

Law Scholars *Amici* are law professors who teach and write in the fields of constitutional and administrative law. *Amicus* William W. Buzbee is the Edward and Carole Walter Professor of Law at Georgetown University Law Center. *Amicus* Noah Rosenblum is an Associate Professor of Law at New York University School of Law. *Amicus* Jodi Short is the Mary Kay Kane Distinguished Professor of Law at University of California College of Law, San Francisco.

Law Scholars *Amici* have a strong interest in the sound development of constitutional and administrative law in the federal courts and are submitting this brief because of the important separation-of-powers issues implicated by the Trump Administration's recent actions seeking to eliminate the U.S. Agency for International Development ("USAID") and other congressionally created and funded agencies. As leading constitutional- and administrative-law scholars, Law Scholars *Amici* are well-positioned to provide insights that may assist the Court in evaluating the parties' arguments concerning separation-of-power principles.

## ARGUMENT

The panel's Opinion in this case, Doc. 2129854, commits errors of exceptional importance regarding the proper relationship between Congress and the Executive Branch. As in many other cases arising from President Trump's first few months in office, the President relied on an unbounded view of executive

power to direct that executive agencies impound duly appropriated foreign aid funds, Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025), as part of the Administration's effort to, in the President's words, "effectively eliminate[]" a statutorily created and funded agency, the USAID, Remarks and a Question-and-Answer Session at the Future Investment Initiative Priority Summit in Miami Beach, Florida, 2025 Daily Comp. Pres. Doc. 280 (Feb. 19, 2025). The U.S. District Court for the District of Columbia found that the Administration had no intention of spending the impounded funds, JA65, concluding that the attempted impoundments constituted a separation-of-powers violation because the President sought to "negate congressional . . . policies," JA71 (internal quotation marks omitted).

Two panel members vacated the district court's injunction, with Judge Pan dissenting. No panelist repudiated the district court's factual findings that the Administration had no intention of spending the appropriated funds, the Administration had not satisfied the conditions precedent for rescission or deferral of the appropriations under the Impoundment Control Act ("ICA"), nor the district court's legal conclusion that withholding of appropriations likely violated the separation of powers. The panel also concluded that the impoundments caused the plaintiff-grantees a cognizable, redressable injury. Op. 12–14. The panel nevertheless held that: (1) the Supreme Court's opinion in *Dalton v. Specter*, 511

U.S. 462 (1994), foreclosed the grantees' separation-of-powers claim because of the statutory claim asserted (but not adjudicated) below; (2) the ICA displaces the grantees' Administrative Procedure Act ("APA") claim because it allows only the Comptroller General, head of Congress's Government Accountability Office ("GAO"), to challenge impoundments; and (3) Plaintiffs cannot succeed on their *ultra vires* claim because the Further Consolidated Appropriations Act of 2024 ("Appropriations Act"), which requires the Executive Branch to spend appropriated funds, does not include a sufficiently specific prohibition against impoundment.  Op. 16–30.

The Opinion must be corrected.  It stands for the extraordinary proposition that:  "Executive action that exceeds statutory authority or violates a statute can never be the basis of a constitutional cause of action."  Dissent 47.  As Judge Pan observed, "'our constitutional system of separation of powers will be significantly altered' because the court 'allows the Executive Branch to disregard federal law in the manner asserted in this case.'"  *Id.* (quoting *In re Aiken Cnty.*, 725 F.3d 255, 267 (D.C. Cir. 2013)) (cleaned up).

Judge Pan's warnings may prove to be understatements.  In its first seven months, the Trump Administration has instructed agencies to impound more than

$425 billion in congressionally authorized funding,[1] as part of its unilateral downsizing of the Federal Government and elimination of certain statutorily created agencies altogether. According to the panel, there is only one individual who can stop this massive usurpation of Congress's spending and legislative powers—the Comptroller General, a non-partisan official appointed by the President. Without action by the Comptroller General, this Administration could direct impoundment of the entire $6.752-trillion federal budget for fiscal year 2024,[2] unilaterally shuttering most or all of the Federal Government. A future administration could direct impoundment of all Department of Defense appropriations.

These extraordinary scenarios illustrate the panel's misunderstanding of the separation of powers. This bedrock constitutional protection depends neither on the views of individual branches of government "nor on whether 'the encroached-upon branch approves'"—including through inaction—"'the encroachment.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497 (2010)

---

[1] Appropriations Comm. Democrats, Trump's Unprecedented Funding Freeze Hits Communities Across America (updated Apr. 29, 2025), https://democrats-appropriations.house.gov/trumps-unprecedented-funding-freeze-hits-communities-across-america.

[2] U.S. Dep't of the Treasury, Joint Statement of Janet L. Yellen, Sec'y of the Treasury, and Shalanda D. Young, Dir. of the Office of Mgmt. and Budget, on Budget Results for Fiscal Year 2024 (Oct. 18, 2024), https://home.treasury.gov/news/press-releases/jy2657.

(quoting *New York v. United States*, 505 U.S. 144, 182 (1992)). Indeed, "[l]iberty is always at stake when one or more of the branches seek to transgress the separation of powers." *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring). The Founders designed the separation of powers "'to preclude the exercise of arbitrary power'" and "'to save the people from autocracy.'" *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 629 (1952) (Douglas, J., concurring) (quoting *Myers v. United States*, 272 U.S. 52, 293 (1926) (Brandeis, J., dissenting)). Courts must "respect and enforce this separation of powers" as a protection of "a 'basic and vital' feature of our system of government." Dissent 45 (quoting *Springer v. Gov't of the Philippine Islands*, 277 U.S. 189, 201 (1928)) (further citation omitted).

Law Scholars *Amici* agree with Judge Pan, Appellees, and *Amicus* the Constitutional Accountability Center that the Opinion conflicts with decisions of the Supreme Court and this Court, including misapplication of *Dalton*. Doc. 2130328 at 9–13; Doc. 2130597 at 5–12. Part I of this brief explains further why *Dalton* should not apply in this case at all, and Parts II–IV explain why en banc review is necessary to resolve questions of "exceptional importance." Fed. R. App. P. 40(b)(2).

## I.   *Dalton* **Does Not Apply Here, and the Panel's Misapplication Leads to Exceptional, Absurd Results.**

The panel erred not merely in its interpretation or application of *Dalton*, but by invoking *Dalton* at all. The statute that the President was alleged to have violated in *Dalton* delegated unbounded discretionary authority directly to the President. 511 U.S. at 473–76. Indeed, the *Dalton* Court concluded that the terms of this statutory delegation rendered unreviewable the President's exercise of delegated authority. But there is no comparable statutory delegation of authority to the President here. As Judge Pan explained, the Appropriations Act authorizes funding to agencies and departments, *not* the President. Dissent 5 (noting that funds were "apportioned directly to the" USAID (citation omitted)); *see also* JA39 ("The act appropriates other funds 'directly to the Department of State' . . . ." (citation omitted)). Nor can the ICA be read as a delegation of impoundment authority to the President when its aim is to restrict the President's authority to impound appropriations, and the President has not satisfied the ICA's required conditions precedent for rescission or deferral.

Rather than exercising statutory authority delegated directly to him, as the President did in *Dalton*, this President issued an Executive Order *directing* agency heads to impound appropriated funds in violation of their statutory authority under the Appropriations Act. Because the President lacks statutory authority to unilaterally direct these impoundments, any *directive* authority that the President

might possess would have to derive from the Constitution, specifically his duty to faithfully execute the law in Article II.  His exercise of this authority thus raises a quintessential constitutional claim, not merely a statutory claim as characterized by the panel.  *See* Dissent 37 ("[T]he crux of the separation-of-powers problem is the President's refusal to comply with the Appropriations Act for policy reasons—that was an impingement on Congress's authority under the Spending Clause and the Appropriations Clause, and also violated the Take Care Clause.").  Because *Dalton* does not address the scope of the constitutional authority that the President seeks to exercise here, it does not bar this Court from resolving plaintiffs' separation-of-powers claim.

Indeed, resolving this constitutional claim is of exceptional importance.  The panel "paves the way for future illegal conduct[]" by misapplying *Dalton* to create an unprecedented exception to constitutional review that would foreclose *any* challenge to "sweeping executive action," including if "the President announced that he would stop enforcing all statutes[.]"  Dissent 36 n.7, 47.  En banc review is necessary to correct these absurd results.

## II.    En Banc Review Is Necessary to Preserve the Executive Branch's Duty to Faithfully Execute Laws.

As noted in Law Scholars's initial brief, Doc. 2120799 at 19–20, Article II of the Constitution does not allow the President (or an agency) to unilaterally override Congress's choices.  The Take Care Clause is an affirmative command that requires

good-faith execution of duly enacted laws, not a license to ignore the will of Congress. *See, e.g.*, Andrew Kent, Ethan J. Leib, & Jed Handelsman Shugerman, *Faithful Execution and Article II*, 132 Harv. L. Rev. 2111, 2118 (2019); *Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 612–13 (1838) (rejecting the argument that, by charging the President with faithful execution of the laws, the Take Care Clause "implies a power to forbid their execution").

Here, the Appropriations Act requires USAID and the State Department to spend all appropriated funds as Congress specified when exercising the very first among its enumerated authorities. U.S. Const. art. I, § 8, cl. 1. The Appropriations Act does not provide agencies with discretion to refuse to spend appropriations. *See, e.g.*, Dissent 5 ("'Funds appropriated by this Act for foreign assistance *shall be made available in the amounts specifically designated* in the respective tables included in the explanatory statement' appended to the Act." (quoting Pub. L. No. 118-47, 138 Stat. 460, 711) (cleaned up, emphasis added)). Nor has the President satisfied the conditions precedent that might allow for rescission or deferral under the ICA, in coordination with Congress, or relied on any "conclusive and preclusive" authority that might allow defiance of a statute. *Trump v. United States*, 603 U.S. 593, 607 (2024) (citations omitted). Yet the President has directed USAID and other agencies to defy the Appropriations Act. Only one conclusion follows: The President has directed agencies not to execute the law in good faith,

but rather to "negate congressional . . . policies," JA71 (internal quotation marks omitted), with no constitutional or statutory authority to do so.

The panel allows this violation of the President's duty to faithfully execute laws and eliminates private actions seeking redress for such violations. If the Opinion stands, the Take Care Clause will be rendered null, and Congress will become a secondary branch with a mere advisory role for spending power. That turns the Constitution on its head. *Cf. Youngstown*, 343 U.S. at 587 ("[T]he President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker."). En banc review is necessary to preserve the Constitution's frame of government.

## III. En Banc Review Is Necessary to Preserve Justice Jackson's Separation-of-Powers Analysis in *Youngstown*.

In applying *Dalton*, the panel does not merely distinguish *Youngstown* incorrectly, it potentially nullifies Justice Jackson's power-balancing framework, which the Supreme Court has upheld for decades. *See* Doc. 2130558 at 7–12 (discussing cases).

The panel magnifies its error by failing to consider the broader implications of its *Youngstown* holding. According to *Youngstown*, where a President "takes measures incompatible with the expressed or implied will of Congress," the Executive's authority is at its lowest ebb and must "rely only upon his own constitutional powers *minus any constitutional powers of Congress over the*

*matter*." *Youngstown*, 343 U.S. at 637 (emphasis added). "Courts can sustain exclusive Presidential control in such a case *only by disabling the Congress from acting upon the subject*." *Id.* at 637–38 (emphasis added). There is no dispute here that the Executive Branch is acting in violation of the Appropriations Act by impounding funds without satisfying the ICA's conditions precedent, which were designed to present unilateral impoundment. And the Administration failed to persuade the district court that the President had "vast and generally unreviewable powers in the realm of foreign affairs," JA67 (cleaned up), sufficient to justify his directive that agencies defy the Appropriations Act.

Yet the panel did not properly consider the scope of the President's inherent authority to direct agencies to violate the law, much less subtract from that authority the "constitutional powers of Congress over" appropriations in Article I. *Youngstown*, 343 U.S. at 637. Instead, the Opinion could be read to "disabl[e] the Congress from acting upon the subject" in the future where the Comptroller General declines to act. *Id.* at 637–38. En banc review is necessary to preserve the *Youngstown* framework and Congress's role in our constitutional democracy.

## IV. En Banc Review Will Allow Better Alignment of Judicial Review of Executive Branch Actions.

In foreclosing the grantees' separation-of-powers, APA, and *ultra vires* claims, the panel allows the Administration's direction to eliminate USAID. This

result is incongruous with recent cases in which the Supreme Court has constrained exercises of executive-agency discretion.  *See* Doc. 2120799, at 12–22.

For example, in *Biden v. Nebraska*, 600 U.S. 477 (2023), and *West Virginia v. EPA*, 597 U.S. 697 (2022), the Court invoked the major-questions doctrine to conclude that executive agencies had exceeded statutory authority even where the President directed policy development.[3]  Both opinions considered that the challenged actions would have hundreds of billions of dollars of economic impact, which factored into the Court's conclusions that the agencies lacked clear congressional authorization.  *Nebraska*, 600 U.S. at 488, 502; *West Virginia*, 597 U.S. at 714–15, 745–46.  Although the major-questions doctrine is not at issue here, these cases demonstrate the importance of courts ensuring that the Executive Branch does not act contrary to or exceed its statutorily delegated authority even when the President directs executive agency action.  *See also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 404 (2024) ("[T]o stay out of discretionary policymaking left to the political branches, judges need only fulfill their obligations under the APA to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA.").  It would be an

---

[3] *See* Jodi L. Short & Jed H. Shugerman, *Major Questions About Presidentialism: Untangling the "Chain of Dependence" Across Administrative Law*, 65 B.C. L. Rev. 511, 533–74 (2024).

odd constitutional outcome for the Judiciary Branch to stop one President from carrying out a student-loan-forgiveness program because it was grounded in an inadequately clear statute, *Nebraska*, 600 U.S. at 505–06, but allow the next President to impound all funding appropriated for student loans and related support, effectively eliminating the entire federal student-loan program, in violation of clear statutory commands.

En banc review is necessary to align separation-of-powers and administrative-law principles for review of agency action and to ensure consistency with the major-questions cases and *Loper Bright*. En banc review should reinforce that, regardless of the nature of the claim, when the Executive Branch is exercising power conveyed by Congress in a statute, the entire Executive Branch must act within the bounds of—and consistent with—its constitutional and statutorily delegated authority.

## CONCLUSION

For the reasons stated above, this Court should grant rehearing en banc.


Dated: August 21, 2025                    Respectfully submitted,

                                          */s/ Patrick R. Jacobi*
Susannah Landes Weaver                    Jonas Monast
ENVOLVE LAW                               Patrick R. Jacobi
5100 Wisconsin Ave. NW, Suite 306         CENTER FOR APPLIED
Washington, DC 20016                          ENVIRONMENTAL LAW AND POLICY
(202) 556-7898                            712 H Street NE, Suite 90006

Washington, DC 20002
(703) 405-8950
patrick.jacobi@caelp.org

*Counsel for Law Scholars* Amici
Curiae

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(b)(4) because this brief contains 2594 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1). The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 21, 2025                      */s/ Patrick R. Jacobi*
                                              Patrick R. Jacobi

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of August, 2025, I caused the foregoing Brief of Law Scholars *Amici Curiae* in Support of Plaintiffs-Appellees' Petition for Rehearing En Banc to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the Court's CM/ECF system, which constitutes service on all parties and parties' counsel who are registered ECF filers.

*/s/ Patrick R. Jacobi*
Patrick R. Jacobi